**PATTERSON–BALLAGH CORP. et al. v. MOSS et al.**

**No. 12849.**

United States Court of Appeals
Ninth Circuit.

Jan. 27, 1953.

Lyon & Lyon, Leonard S. Lyon and Reginald E. Caughey, Los Angeles, Cal., for appellants.

Westall & Westall, Joseph F. Westall and Edward F. Westall, Los Angeles, Cal., for appellees.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

Letters Patent No. 2,190,880 were issued to appellee Perry M. Moss on February 20, 1940, after application filed January 21, 1938. Patentee thereafter filed suit against Patterson-Ballagh Corporation alleging infringement and asking damages. The trial court in an able and exhaustive opinion, D. C.S.D.Cal.1950, 89 F.Supp. 619, 620, held claims 2 and 7 of the patent in suit valid and claim 2 infringed by certain devices manu-·factured and sold by appellants. We detail here merely those facts and circumstances deemed necessary to clarify certain observations we desire to make to supplement the opinion of the trial court. We accept in the main the reasoning of that court. Its opinion contains a detailed description of the device in question, the events giving rise to the present controversy, and the contentions of the respective parties. To the opinion of the trial court we refer those who may be interested in the factual situation beyond that recited in this opinion.

The patentee and original plaintiff, Perry M. Moss, assigned the patent, together with the right to recover for past infringement, to Phoebe E. Moss, his wife, prior to the trial. Subsequent to the filing of the action, Byron Jackson Company acquired control of· and dissolved the original defendant, Patterson-Ballagh Corporation, assuming

any liabilities for infringement of the Moss patent. Byron Jackson Company, after the dissolution of Patterson-Ballagh Corporation, continued to manufacture and sell the devices which are alleged to infringe the Moss patent. Both the original parties and their successors in interest have remained parties to the action.

In the original drilling and subsequent operation of oil wells, it is necessary to lower drilling tools and other material into the well hole and lift the same therefrom. A wire cable or drilling line is wound around a cylinder drum on the derrick floor and run to the derrick top, where it is rove through a pulley on the crown block and passed downward into the hole with the particular tool or material attached. The problem which the device in issue (which will be referred to as a "spooler"[1]) is designed to alleviate is the wave vibration or lateral whip of the drilling line between the crown block and the cylinder drum. This lateral motion prevents a proper winding of the cable around the cylinder drum. The result is excessive wear upon the wire strands of the cable, thus diminishing its effective life. The spooler is used to iron out the waves in the cable.

The spooler described in the Moss patent consists of a semi-cylindrical metal shell in two sections, containing therein rubber bearing surfaces with an axial bore slightly larger than the drilling line which passes through it. V-shaped arms are attached to the top and bottom of the spooler on each side, and to these arms are fastened bridles which are rove over pulleys attached to the derrick and allowed to hang over the outside of the derrick with equal weights suspended from them. The purpose of the bridles and weights is to stabilize the lateral motion of the spooler which is mounted 20 to 30 feet above the derrick floor.

An eye is affixed at the top of the spooler, eccentric to its longitudinal axis, and to this eye is attached a hanging line secured up in the derrick. The object of this arrangement is to suspend the spooler at such an angle of inclination from the vertical that it will hang substantially parallel to the drilling line, thereby minimizing wear upon the line caused by the pressure of the spooler. This is described in the specifications of the patent as follows: "An important feature of this invention is to provide a line controller or guide having an elongate bearing effect and which is so mounted in the rig that the axis of the free bearing is substantially coincident or identical with that of the slanting line or cable from the drum 3 so that the line can move in either direction endwise with a minimum of pressure from the controller."

The position of the eye and the manner in which the spooler is suspended are crucial to the Moss patent. Appellants assert that the manufacture and sale of their spoolers is under a license agreement with J. E. Reed, who was issued Letters Patent No. 2,238,398 on April 15, 1941, after application filed May 22, 1937. This license was issued in May 1937. It is agreed that the spooler disclosed in the Moss patent shows every element of the Reed patent, except that in the Moss patent the spooler is suspended from a hanging line attached to an eye at the top of the spooler in such a manner as to enable the spooler to hang substantially parallel to the drilling line which passes through it. In the Reed patent the eye is placed in the middle or longitudinal center of the spooler. It is conceded that hanging the spooler from the middle eye causes greater pressure upon the drilling line from the spooler, and, therefore, more rapid wear. In July 1937 appellant Patterson-Ballagh Corporation commenced placing an eye adjacent to the top of the spoolers it was manufacturing under the Reed patent. Appellees charge that these latter spoolers infringe the Moss patent.

Appellants first contend that the Moss patent is not valid on the grounds that it was obvious to one skilled in the art of oil well drilling and, further, that the subject matter of the patent was included in certain other spoolers manufactured and used prior to Moss's date of invention.

1. The District Court stated that this device is also sometimes designated a "draw works line guide or controller", "wire line guide", "line controller" or "wire line spooler".

The Moss spooler represents one of the more recent efforts to deal with an old problem, that is, the problem of lateral whip of the drilling line between the crown block and the cylinder drum. Previous spoolers had succeeded at least to some extent in diminishing the whip of the cable. However, the Moss spooler, with its eye for the hanging line at the top, was the first spooler not only to diminish the lateral whip of the line but also to substantially eliminate the frictional wear on the line caused by the spooler itself when hung in a different manner, for example, from a middle eye as in the Reed patent.

Claim 2 of the Moss patent expresses the asserted contribution to the prior art as follows:

"A draw works drum line controller body having an elongate, line receiving bore, a pair of opposite lateral control devices each including parts diverging toward the opposite ends of and connected to said body to stabilize it against vibration on its minor axis in the plane of said devices, and a suspension means connected to said body at a point eccentric to the major axis and adjacent to one end of the body to support the body in normal position with the bore substantially parallel and contiguous to the line for reception thereof substantially without load of the body on the line when this is in a vertical plane transverse to the axis of the draw works drum."

■ It is quite apparent that simplicity alone will not preclude invention. Hindsight tends to color the seeming obviousness of that which in fact is true contribution to prior art. "Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skilful attention." Diamond Rubber Co. v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527.

If hanging a spooler from an eye at the top was obvious to one skilled in the art, including a practical man of the oil fields, we do not understand why appellants manufactured their spoolers with an eye in the middle from July 1936 to July 1937. There are other unanswered questions. If appellants finally changed the eye on their spoolers from the middle to the top in July 1937 in response to suggestions received from men working in the oil fields, as they allege, why were these men not brought forward to testify? If these suggestions were received in 1936 and 1937, why were they not incorporated in a patent application for a spooler filed by appellants in December 1936, and the Reed patent application filed in May 1937?

Spoolers in use prior to the date of invention of the patentee Moss are asserted by appellants to have incorporated the subject matter of the Moss invention. Each of the patents in question was considered by the District Court and the contention was rejected.

■ Appellants had the burden of proof on the question of the validity of the Moss patent since a presumption of validity arises from the issuance of a patent. Mumm v. Jacob E. Decker & Sons, 1937, 301 U. S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; Radio Corporation of America v. Radio Engineering Laboratories, Inc., 1934, 293 U.S. 1, 7, 55 S.Ct. 928, 79 L.Ed. 163. Reasonable doubts must be resolved in favor of the validity of the patent. The presumption created by the action of the Patent Office is the result of the expertness of an administrative body acting within its specific field and can be overcome only by clear and convincing proof. The District Court found that the appellants had not met this burden of proof. It did not err.

■ Upon consideration of the wording of claim 2, and bearing in mind the above mentioned presumption of validity, we are not persuaded by the additional contention that claim 2 is invalid because it is not suf-

ficiently definite to meet the requirements of 35 U.S.C.A. § 33 (1940 ed.)[2]

■■ Appellants challenge the determination that their spoolers manufactured with the eye for the hanging line at the top infringe claim 2 of the Moss patent. Infringement is a question of fact. See Stilz v. United States, 1925, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202; United States v. Société Anonyme des Anciens Establissements Cail, 1912, 224 U.S. 309, 322, 32 S.Ct. 479, 56 L.Ed. 778. The trial court resolved the question in favor of appellees. This determination is not clearly erroneous within the meaning of Fed.R.Civ.P. 52(a), 28 U.S.C.A.

■ In accordance with the doctrine of equivalents, one device infringes another if it performs substantially the same function in substantially the same way to obtain the same result. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097; Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147; Machine Co. v. Murphy, 1877, 97 U.S. 120, 125, 24 L.Ed. 935. Application of this doctrine to the facts of this case does not require a contrary conclusion to that reached by the trial court, as appellants contend. Advertising by Patterson-Ballagh Corporation suggests that their spoolers perform the same function as the Moss spoolers, that is, they "dampen the whip and iron out the 'traveling wave'" in the drilling line. Appellants' advertising further shows that their spoolers were intended to accomplish the same result, efficient and economical winding of the line around the cylinder drum, in the same manner as contemplated by Moss, that is, by a "freely hanging" spooler, one whose "frame hangs freely about the drilling line."

Reliance is placed by appellants upon a drawing made by Allen E. Hambly, patent attorney for appellant Byron Jackson Company, which purports to demonstrate that appellants' spoolers do not accomplish the result described in claim 2 of the Moss patent. Computations made on the basis of this scale drawing of appellants' three spoolers hanging from an oil derrick are said to show that they hang at an angle of inclination from the vertical of from approximately 9 to 30 degrees.[3] Since the drilling line from the crown block to the cylinder drum is inclined approximately 4 degrees from the vertical, the argument is made that appellants' spoolers do not hang at an angle of inclination substantially parallel to the drilling line intended to pass therethrough as described in claim 2 and that noticeable resistance is therefore imposed on the drilling line by these spoolers as distinguished from the spooler described in the Moss patent.

Appellants' argument is inconsistent with their own advertising which describes their spoolers as "freely hanging" and states that "the rubber liners guide the line firmly *and without friction.*" (Emphasis added.) A freely hanging spooler would not impose substantial resistance upon the wire line running through it. Moreover, the drawing in question upon which the computation of angles is based does not purport to show the spoolers in working condition with arms, bridles and weights attached. We

---

2. 35 U.S.C.A. § 33 (1940 ed.):
   "§ 33. Application for patent; description; specification and claim

   "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; * * *."

   The requirements of a proper specification will in the future be governed by the provisions of 35 U.S.C.A. §§ 111 and 112, effective January 1, 1953.

3. Appellants' 6-section spoolers are said to incline 9°5' from the vertical; their 4-section spoolers are said to incline nearly 14° from the vertical; their 2-section spoolers are said to incline more than 30° from the vertical although the drawing did not include this spooler. The District Court held that all three spoolers infringed claim 2.

**408**

think "normal position" in claim 2 means working position [4] and the drawing in question does not indicate what effect attachment of the arms, bridles and weights may have on the angle of inclination from the vertical assumed by appellants' spoolers. Perry M. Moss testified that his spooler would hang at an angle of inclination within 2 or 3 degrees of the angle of the drilling line; this testimony should be construed as referring to a spooler in working position. Further, this testimony should not be held to limit the reasonable meaning of "substantially parallel", as used in claim 2. For the reasons stated, the trial court properly rejected the drawing as conclusive proof of non-infringement.

Although the District Court originally determined in its opinion that appellees should have judgment for attorneys' fees, the ultimate findings of fact and conclusions of law reserved both the question of attorneys' fees and that of willful infringement. We are of the opinion that appellants' contention that appellees are not entitled to attorneys' fees and increased damages for willful infringement under the particular facts of this case and the applicable provisions of 35 U.S.C.A. § 70 (1951 ed.)[5] is premature. The reservation of the question of attorneys' fees until after hearing before the Master on an accounting for damages is reasonable since work performed in relation to the accounting might well be an element in determining the amount of allowable attorneys' fees. The reason for allowing appeals in patent infringement cases from interlocutory orders under 28 U.S.C.A. § 1292(4) is to prevent useless waste of time and money for an accounting where a patent has been improperly held valid and infringed by a lower court. Determination of ancillary questions relating to scope of damages, attorneys' fees and willful infringement can

well await final judgment. A number of cases have established the proposition that it is permissible for the District Court to determine the question of willful infringement subsequent to the report of the Master rather than in the earlier proceedings upon the issues of validity and infringement. For example, New England Fibre Blanket Co. v. Portland Telegram, 9 Cir., 1932, 61 F.2d 648, certiorari denied 289 U. S. 752, 53 S.Ct. 696, 77 L.Ed. 1497; Pyle Nat. Co. v. Lewin, 7 Cir., 1937, 92 F.2d 628; Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 1933, 66 F.2d 361, certiorari denied 290 U.S. 681, 54 S. Ct. 119, 78 L.Ed. 587; Anchor Hocking Glass Corp. v. White Cap Co., D.C.Del. 1942, 47 F.Supp. 451; Utah Radio Products Co. v. Delco Appliance Corp., D.C. W.D.N.Y.1938, 24 F.Supp. 328.

Judgment affirmed.

---

4. The Patent Office in Office Action of June 22, 1940, rejected a request by Reed to amend his patent application so that an interference would be declared with claim 2 of the Moss patent application. Referring to the Moss application, the Patent Examiner stated one of the objects of the Moss spooler " * * * is to provide a line controller which in

its *normal working position* forms a guide along the axis of the cable so that the cable may run quite free from bearing contact pressure." *(Emphasis added)*.

5. Damages and attorneys' fees will in the future be governed by the provisions of 35 U.S.C.A. §§ 284 and 285, effective January 1, 1953.