SPONGE PRODUCTS CORPORATION
and The Fuller Brush Company
v.
Frederick V. FOWLER, Stanton Supply
Co., Inc., and Fred V. Fowler Co.
Civ. A. No. 55–931.

United States District Court
D. Massachusetts.
Jan. 14, 1957.

804

A. Donham Owen, San Francisco, Cal., and Hector M. Holmes, W. R. Hulbert and Fish, Richardson & Neave, Boston, Mass., for plaintiffs.

Porter, Chittick & Russell, Robert B. Russell, Boston, Mass., for defendants.

FORD, District Judge.

This action for patent infringement comes on for trial on the merits after denial of defendants' motion for summary judgment, Sponge Products Corporation v. Fowler, D.C., 140 F.Supp. 232. The patent in suit, No. 2,667,653, for a combined mop and wringer, was issued on February 2, 1954, to plaintiff Fuller Brush Company as assignee of Alfred L. LeFebvre. Plaintiff Sponge Products Corporation is a licensee under the patent. Mops made and sold by defendants are alleged to infringe Claims 1 and 2 of the patent. Claim 1, which is typical, reads:

"1. In a mop including a handle and a head secured to said handle and presenting a front edge forward of said handle in relation to direction of mop advance under normal mopping action, and a rear edge at the opposite side of said handle, a compressible sponge block releasably secured to said head and presenting at the front of said head a dirt accumulating face of substantial depth and at the rear of said head a rear face, and having a bottom working face presenting at the rear an edge displaced below said head, a presser element pivoted adjacent the rear edge of said head to swing about an axis fixed relative to said head and above said bottom working face and at right angles to said handle, said presser element having a pivot connecting portion and a sponge pressing portion in angular relation to said pivot connecting portion and spaced thereby from said axis a distance less than the thickness of said sponge at the rear face, and an operating handle for said presser element to swing said element against the undersurface of said sponge to compress said sponge against said head with said sponge pressing portion first contacting said sponge at said rearward edge below said head and displacing said latter edge forwardly and progressively compressing said sponge from rear to front while leaving the front face of said sponge substantially unobstructed to flush dirt accumulations out said front face."

The LeFebvre mop consists of three principal parts, a mop handle, a mop unit, and a wringer unit. The latter two are easily detachable from the handle to facilitate replacement of worn out units, and to permit use of the mop without the wringer. The mop unit is made up of a block of cellulose sponge attached to a backing plate which in turn is attached to a mop handle at a 45° angle. The wringer member is a metal plate hinged or pivoted to the backing plate at a point to the upper rear of the sponge block. It consists of a flat pressure plate set away from the pivot a distance less than the thickness of the sponge by a connecting portion which is joined at an angle to the pressure plate itself. A handle is provided by which the squeezing plate is moved and which snaps onto the mop handle to hold the wringer unit out of the way during mopping operations. The squeezing operation is performed by swinging the squeezing unit around the pivot to compress the sponge and drive out excess water.

The essential part of the mop, so far as the present action is concerned, is the squeezing unit and in particular the connecting portion between the pivot and the squeezing plate. It is this feature which plaintiffs say constitutes the nub of LeFebvre's invention, and hence its part in the squeezing operation must be considered in detail. When the mop is held in such a position that the sponge block is facing downward with its lower surface nearest the floor, and the squeezing unit handle is disengaged from the mop handle and moved downward, it carries the pressure plate along until it touches the rear lower corner of the sponge block. As the handle is then moved forward and upward in a continuing arc, the pressure plate is also moved forward and upward, compressing the sponge and forcing the water out of it. This compression is produced first at the rear of the sponge and then continues progressively forward and upward, thus tending to push water through the sponge and out at the forward face of the sponge. At the end of its movement the pressure plate is in a position approximately parallel to the lower face of the backing plate, and the sponge is evenly compressed, bulging forward slightly at its front face, which is the only face left wholly unobstructed.

If the connecting portions were eliminated, and the mop constructed with one end of the flat squeezing plate attached directly to the pivot, the squeezing plate would swing, like a door on its hinges, directly about the pivot with the pivot end remaining at the same point. Hence the squeezing plate would never approach a position in which it was parallel to the backing plate, but would merely form a gradually decreasing acute angle with it, with the result that the sponge would be unevenly compressed from back to front, with the greatest squeezing taking plate at the rear end of the sponge block.

The advantage which LeFebvre emphasized as resulting from his construction was chiefly the progressive compression from the rear to the front of the sponge, causing the water to be flushed through the sponge and out at the front end. The movement of the water in this direction tends to carry away the dirt which in normal mopping operations would be picked up mostly by the forward edge of the sponge. However, this rear to front flushing action seems to be due chiefly to the fact that the squeezing unit is mounted at the rear of the sponge block. The idea of pivoting the squeezing plate at the rear of a mop so that it would compress the mop from the rear to the front was known long before LeFebvre. For instance, the Sendler German patent No. 611,571 showed such a construction.

There are other advantages pointed out for the LeFebvre mop which are due specifically to offsetting the squeezing plate from the pivot by a connecting portion. This causes the squeezing plate to move forward and upward as a whole while the sponge block is being compressed, rather than swinging in an arc about one of its ends which remains fixed to the pivot. This brings the plate at the end of the operation into a position parallel to the backing plate. The rear end of the sponge is not subject to excessive wear from being squeezed more tightly than the rest of the sponge. The whole sponge is compressed evenly so that the water is driven uniformly from the whole sponge. This more efficiently completes the back to front flushing of the sponge by insuring that at the end of the operation the water driven toward the front of the sponge is fully squeezed out. It also prevents the front of the block from being left with excessive moisture which might hasten deterioration of the sponge. These results all tend to increase the efficiency of the squeezing operation and to prolong the useful life of the sponge block.

Defendants contend that there is nothing new in the LeFebvre construction since the use of a connecting portion to offset the squeezing plate from the pivot

was shown by Sendler's German patent No. 611,571. Sendler makes no claim for such an element but defendants say it is already shown in Figure 1 of the Sendler patent. However, a close examination of the drawings of the Sendler patent reveals that what Sendler shows is a flat squeezing plate which is pivoted to the rear of the sponge block by rolling the end of the plate around a pintle to form a hinge. It is true that as a result of this construction the plane of the squeezing plate is offset from the axis of rotation of the pintle by a distance (about $\frac{1}{16}$ of an inch) equal to the thickness of the part of the plate which is thus rolled to form the hinge. Whatever offset may be technically present in the Sendler mop is merely a coincidental result of the method of making the hinge, not intended to affect the efficiency of its operation. It is so small that it could not perform the function of the LeFebvre offset to any appreciable degree. Before LeFebvre no one saw that such an offset, increased to suitable dimensions, could produce a more efficient wringing operation. Consequently Sendler cannot be said to have anticipated LeFebvre.

■■ LeFebvre therefore introduced a new element into the combination of elements constituting his mop, an element which produced a different mode of operation for the squeezing element of his mop and thereby added to the efficiency and life of the mop. It is true that the new element is physically a small one. But this does not mean that it cannot constitute a patentable invention. Gillman v. Stern, 2 Cir., 114 F.2d 28, 30. The real test, of course, is whether the modification introduced by Le-Febvre was one which would have been obvious at the time the invention was made to a person having ordinary skill in the art. The question of the obviousness of an improvement is often a difficult one to decide. There is always a danger in trying to resolve it by hindsight, for the fact that a change may seem simple and easily understood once it has been pointed out does not mean that it was necessarily obvious to one of ordinary skill before the inventor had the insight to see it and realize its value. The significant factor here seems to be that the field of mop making is a crowded art, in which over a long period of years there have been numerous suggestions for improvements in the squeezing operations involved. At least since 1936 when cellulose sponges became available for use in mops, there have been numerous patents granted for improvements in mops, and a constant search has been going on for better methods of wringing out such sponge mops easily and more efficiently. In all these years no one before LeFebvre suggested the apparently simple change which his patent discloses. In the light of this fact it is difficult to see how it could be held that LeFebvre's improvement was obvious to anyone with ordinary skill in the art. Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403, 406; B. G. Corporation v. Walter Kidde & Co., Inc., 2 Cir., 79 F.2d 20, 22.

■ The test of commercial success is not necessarily conclusive on the question of invention but it is a factor entitled to considerable weight when the question of invention is a close one. The evidence shows that plaintiff Fuller Brush Company has sold over 4,500,000 mops of the LeFebvre type since 1949. O'Cedar Corporation, a sub-licensee of plaintiff Sponge Products Corporation, in the same period has sold over 10,000,000 O'Cedar mops of the LeFebvre type. These mops are among the higher priced mops offered on the market. O'Cedar in its advertising has emphasized the improved flushing action of its mop as one of its distinctive features. This commercial success, which began immediately when LeFebvre type mops were placed on the market, and has continued since then, is a strong indication that Le-Febvre has met an existing need for an improvement in mops and has done so

in a way which was not obvious to others skilled in the art.

Prior to the bringing of this action plaintiffs informed defendants that if they were willing to change their mops in only one respect, i. e. to change the shape of the squeezing plate so as to eliminate any connecting portion, then plaintiffs would regard the defendants' mops as non-infringing and would cease to object to them. Defendants refused to eliminate the connecting portion. This refusal is a further indication that the LeFebvre connecting portion is a patentable improvement in the mop making art. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 441, 31 S.Ct. 444; 55 L.Ed. 527; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 919.

## Infringement

The issue of infringement in this case is one which presents no great difficulties. The accused mop is obviously substantially the same as the LeFebvre mop in its general construction with the same three detachable principal parts, the handle, the mop unit, and the squeezing unit. The squeezing unit similarly consists of a metal plate pivoted at the rear of the backing plate of the sponge block to the upper rear of the sponge block, and provided with a handle for moving the squeezing plate and clipping it to the mop handle. The main portion of the squeezing plate has a broad flat surface. The plate is slightly curved at the front, and at the rear end, where the plate is pivoted to the backing plate, it is curved to form a distinct connecting portion like that shown in LeFebvre. The only discernible difference is that the junction of the connecting and pressure portions presents a somewhat sharper curve as shown in the patent drawing than it does in the accused mops. However, this does not appear in any way to change the operation of the squeezing unit. The squeezing unit of the accused mops clearly corresponds in every important detail to LeFebvre's description of the new element in his invention. What difference, if any, can be found between the mops consists in the use by defendants of familiar equivalents for certain elements such as the use of a wire grid in place of a perforated plate for a squeezing element, or variations in the way in which the various detachable units making up the mop are joined together. Any of these differences is an obvious variation which falls fully within the scope of the claims of the patent.

Defendants' principal contention is that their mop cannot infringe since it embodies only elements found in the teachings of expired patents, and particularly of the Hillier 1902 British patent No. 6435. Hillier's complete specification describes a device consisting of a long-handled scrub brush having a sponge-pad fixed to the wooden back of the brush. There is a board or plate hinged to the back of the brush just above the sponge-pad with a lever arrangement for forcing the board or plate down on the sponge-pad to squeeze water from it. Hillier's drawings show a flat squeezing plate with no connecting portion offsetting the plate from the pivot. (Defendants' model, Exhibit X, does not follow exactly the Hillier drawing, since each of the two hinges used to attach the squeezing board to the brush back has the leaf attached to the board bent so as to form a small connecting portion; the hinge shown in the patent drawing has a hinge with a perfectly flat leaf.)

Defendants rely on a statement in Hillier's provisional specification that "The handle of brush is provided with hinged joints and a spoon shaped clip by which the user can exert pressure on the sponge at will to rid it of surplus water." This, it is urged, is broad enough to cover a curved squeezing plate such as that used by defendants. Defendants have in fact constructed a mop (Exhibit W) which follows the Hillier drawing except for the use of a curved squeezing plate such as defendants use in their own mops.

Hillier gave no further explanation of what he meant by a spoon shaped clip, and did not show one in his drawings. All reference to it was omitted in the complete specification. It may be possible by the use of imagination and hindsight to discover in Hillier's spoon shaped clip defendants' curved pressing plate, since a spoon in cross-section would have a curved outline generally resembling the curved conformation of the plate. This, however, does not establish that Hillier taught what defendants are using, or, what amounts to the same thing, that Hillier disclosed what is claimed by LeFebvre as his invention. Obviously there cannot be found in Hillier's obscure reference to a spoon shaped clip any adequate directions for the construction of LeFebvre's squeezing plate offset by an angularly joined connecting portion. Dewey & Almy Chemical Co. v. Mimex Co., Inc., 2 Cir., 124 F.2d 986, 989. Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427, 431. Defendants cannot reconstruct Hillier in the light of LeFebvre and claim that the result is an anticipation of LeFebvre. Naylor v. Alsop Process Co., 8 Cir., 168 F. 911, 920.

Johnson's U. S. Patent No. 1,551,668 shows a curved squeezing plate which superficially resembles defendants' plate. Johnson's wringing unit, however, was designed for squeezing a string mop and not a cellulose sponge mop. It is a clam shell like unit consisting of two plates which are brought together around the mop element so as to squeeze it out between them. Nothing in Johnson gives any indication of LeFebvre's single angularly offset pressure plate or its resulting mode of operation on a cellulose sponge block.

■ The conclusion must be that Claims 1 and 2 of LeFebvre patent No. 2,667,653 are valid, and are infringed by defendants' Teddy and Teddy King-size mops.

Judgment in accordance herewith will be entered for plaintiffs on the complaint and on defendants' counterclaim.