**RPTZ–PATCO, INC., an Oregon corporation, Plaintiff,**

v.

**PACIFIC INLAND NAVIGATION COMPANY, Inc., a Washington corporation, Defendant.**

**Civ. No. 63–109.**

United States District Court
D. Oregon.

March 31, 1966.

John R. Gilbertson, White, Sutherland & Gilbertson, Portland, Or., for plaintiff.

John Gordon Gearin, Koerner, Young, McColloch & Dezendorf, Portland, Or., W. Melville Van Sciver, Chicago, Ill., for defendant.

KILKENNY, District Judge:

Plaintiff charges the defendant with an infringement of the Pickrell Patent, U. S. Letters Patent No. 3,033,150. Defendant counters with a challenge to the validity of the patent.

The patent covers a barge, designed for the simultaneous transport of petroleum products and dry cargo, under conditions which meet Coast Guard safety standards. Described, is a V-shaped dry cargo hold, immediately below the weather deck and extending over the length of the barge's storage area. Below this hold is a cofferdam, V, in shape, an empty space between two V-shaped layers of the dry hold's double skin. The cofferdam operates to keep the dry cargo separate from the space underneath which was designed for liquid storage. The design permits each cargo to extend to the weather deck, thus maintaining a low center of gravity. The V-shaped design for the dry cargo is particularly useful in loading and unloading grain. The cofferdam allows access to the void space from either side of the vessel and a clear view of the entire interior may be had from certain vantage points. Patco is an entity owned by Mr. Pickrell, Tony Zagar and Russell Family, Inc., to which entity Pickrell assigned the patent in suit. By agreement between Patco and Tidewater Barge Lines, the latter, in 1959, started construction of two barges incorporating the Pickrell invention. The first barge was completed in January 1960, while the second was completed in either March or April of the same year. Under the arrangement these two barges were to be built and tested and on the basis of the experience, further negotiations were to be had between the parties.

Pacific Inland, the accused, thereafter constructed and operated three barges on a design called W-shaped in the cofferdams between the cargo areas. I do not distinguish between the so-called W-shape used by the accused and the V-shape patented by Patco.

Plaintiff's barges have been in continuous operation since their launching and in their service on the Columbia River carrying payloads in both directions to their full draft and are capable of carrying both dry and liquid cargoes simultaneously without danger of cross-contamination. Pickrell, the patentee, prior to making of the invention forming the subject matter of the Pickrell Patent, was experienced in the construction, conversion and maintenance of tugs and barges and was acquainted with the method of transportation on the Columbia River and the problems connected therewith. The Columbia is a navigable stream and large volumes of petroleum products are loaded in the Portland-Vancouver area and transported and unloaded at points upstream. There, large volumes of grain products are loaded and carried and unloaded downstream principally in the Portland-Vancouver-Longview area.

The parties agree that the utilization of a V-shaped cofferdam is the outstanding feature of the Pickrell Patent. The claims in suit are claims 1 and 11, which describe a V-shaped cofferdam, with provisions for access, and claims 6 and 8, which describe the same cofferdam and a collection pit. The latter claims are not concerned with the interior of the cofferdam.

### ISSUES ON VALIDITY

I. Were those interested in the prosecution of the Pickrell Patent, both morally and legally required to call the attention of the Patent Office to the teachings of the barge Umatilla, the "Russell Patent" and the prior Russell barges?

II. Would these teachings, and the Coast Guard Regulations, not specifically considered, materially add to the "prior art" which the Patent Office did consider and would such consideration have

resulted in the issuance of a patent, if any, with substantially narrower terms than the claims in suit?

. III. Was the Pickrell Patent obvious when viewed in the light of the prior art and the disclosures of the Pickrell Patent, within the meaning of 35 U.S.C. § 103, as construed?

IV. When applied to the facts in this case, is the presumption favoring the validity of the Pickrell Patent controlling?

## I.

Defendant is of the belief that the facts in this case fall within the doctrine taught in Flick-Reedy Corp. v. Hydro-Line Mfg. Co., 241 F.Supp. 127 (N.D. Ill.W.D.1964) to the effect that a patent may be unenforceable because of a misrepresentation by the patentee as to the status of the prior art.

■■■ It is my belief that the patentee in *Flick-Reedy Corp.* deliberately misrepresented the status of the prior art. At least, the trial court so found. I do not find in this record any such deliberate misrepresentation. Numerous witnesses testified on the subject of the prior art. There is no claim here that any device of which Pickrell was aware "anticipated" his design, within the meaning of 35 U.S.C. § 102. The oath required by 35 U.S.C. § 115 does not require an applicant to furnish information that the Patent Office might apply against him. Such oath merely requires that the affiant "[believe] himself to be the original and first inventor," and that he does not know himself not to be first inventor. Pickrell was not bound, morally or legally, to call attention to the teachings of such designs.

## II.

One of the main contentions of the defendant is that the undisclosed prior art devices, taken together with the Coast Guard Regulations, if considered by the Patent Office, would have prevented the issuance of the Pickrell Patent.

The Coast Guard Regulations, published since 1942, and considerable material published prior to that time by the Bureau of Marine Inspection and Navigation, defined the term "cofferdam," [1] and specified where cofferdams would be required for safety on tank type vessels. The regulations for vessels built after 1951, have required that cargo tank spaces extend to the main deck, with hatches and vents on the weather deck.[2] Important gleanings from the history of the regulations is contained in the testimony of Rear Admiral Murphy. Although the Patent Office made no direct reference to the regulations in the prosecution of the Pickrell Patent, it seems quite obvious that the office was fully aware of the requirements by its action in ordering the condensation of certain language of the original application.[3]

■■■ The prior art which defendant urges the Patent Office should have considered with the art before it, and the Coast Guard Regulations, consists principally of: (1) the "Sinclair-Petrolore," the design of which disclosed a series of V-shaped single skinned dry cargo holds separated from each other by vertical cofferdams and liquid storage spaces disposed below these holds; patent 754,-107 (Wolvin) cited by the Patent Office showed a single skinned dry cargo hold having a liquid storage space below; also cited by the Patent Office was 1,090,659, showing V-shaped cargo

---

1. 46 C.F.R. 30.10-13.
   "The term 'cofferdam' means a void or empty space separating two or more compartments for the purpose of isolation or to prevent the contents of one compartment from entering another in the event of the failure of the walls of one to retain their tightness."

2. 46 C.F.R. §§ 32.55-45, 32.60-10, 32.65-15.

3. "The void produced by the spacing between the top and bottom surfacing of the cofferdam enables both types of cargo to be carried simultaneously with the vessel satisfying *standard safety requirements* and without contamination of adjacent cargoes." (Ex. 29, p. 2.) (Emphasis supplied.)

spaces; patent 2,896,416 (Henry) showed transverse cofferdams; and patent 2,594,930 disclosing both horizontal and vertical cofferdams in a vessel designed for double-duty transport of petroleum and asphalt products. I find that the citing of the Sinclair-Petrolore would not have added anything to the disclosed prior art; (2) plaintiff's barges 21, 27 and 76, which show a V-shaped single skinned dry cargo hold and central sump, but show no cofferdams; (3) the "Russell Patent" shows a single skinned V-shaped dry cargo hold with a centrally disclosed collection pit, but no cofferdams. While the Russell Patent and barges 21 and 76 also showed continuous cargo space extending over most of the length of the barge, the McIlhenny Patent, 695,758, used in the prosecution of Pickrell, made the same disclosure; (4) the Wolvin Patent, No. 754,107, showed a V-shaped hold, an over and under disposition of liquid and dry cargo. The citing of these teachings would have added nothing to the art already disclosed in the prosecution; (5) the Umatilla, shows an over and under disposition of dry cargo and liquid storage area separated by a horizontal cofferdam. This would have added nothing to the prosecution, since the Hudson, 2,594,930, shows both horizontal and vertical, or U-shaped cofferdams. To be considered at this point is the fact that the Hudson patent was cited only as a "pertinent art" and not as among "references applied." In either category, the Patent Office would know of the teachings of these patents. From all of these devices, we can select certain features and come up with a barge which is essentially the same as Pickrell, with the exception of the V-shaped cofferdam. I find that the submission of the teachings of these devices would not have materially added to the prior art which was actually considered by the Patent Office during the course of the prosecution of the Pickrell Patent.

### III.

Defendant argues that the subject matter of Pickrell and the prior art, including the Coast Guard Regulations was such that the subject matter as a whole would have been obvious at the time the invention, to a person having ordinary skill in the art to which said subject matter pertained.[4] I agree.

Pickrell, the father of the patent, testified that the teachings of the prior art made "obvious" what he had accomplished with his device with the sole exception of his design for the V-shaped cofferdam. Before proceeding to a discussion of this most serious problem, it is necessary to examine a few guidelines, even though they may not fit with precision the gauntlet of facts here presented.

To invalidate a patent, it is not enough to show, in all cases, that other devices could be modified so as to functionally duplicate the disputed device. Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658 (1892); Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944); Himes v. Chadwick, 199 F.2d 100 (9th Cir. 1952). In other words, it is not enough to defeat a patent to demonstrate that features from other prior devices can be combined to perform the function of the patented article. Payne Furnace & Supply Co., Inc. v. Williams-Wallace Co., 117 F.2d 823 (9th Cir. 1941) and, in some cases, the fact that prior art devices were not modified or adapted to the particular use, is in itself evidence of invention, suggesting that the necessary changes "[require] more than mere mechanical skill." Pacific Contact Lab-

---

4. 35 U.S.C. § 103.

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

oratories, Inc. v. Solex Laboratories, Inc., 209 F.2d 529 (9th Cir. 1953). Thus, warning trial courts to beware of the seductive influence of hindsight. Patterson-Ballagh Corp. v. Moss, 201 F.2d 403 (9th Cir. 1953); Bissell, Inc. v. E. R. Wagner Mfg. Co., 204 F.Supp. 801 (E.D.Wis.1962).

■■ The fact that expert witnesses may be brought forward to show that the new device, which seemed to have eluded the researcher of the world, was always ready at hand and easy to be seen by mere skillful attention, is not controlling. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911). Furthermore, the Pickrell Patent does a job which no prior design accomplished. That fact must be considered. Twentier's Research, Inc. v. Hollister, Inc., 319 F.2d 898, 902 (9th Cir. 1963).

■ Be that as it may, and persuasive as those authorities may appear, I must return to the basic rule that an essential requirement for validity is that the subject-matter disclose invention or more ingenuity than the work of a mechanic skilled in the art. Although this test presents difficulties in its application, its purpose is clear. Some substantial innovation is necessary. It has been said many times that the primary purpose of our patent system is not to reward the individual, but to advance the arts and the sciences.

■ Pickrell's design is distinctive functually in that it provides for the simultaneous transportation of grain and certain grades of petroleum, while preserving the loading and unloading convenience of a V-shaped dry cargo hold. From a structural viewpoint, the design is distinctive because of its V-shaped cofferdam. There is some testimony that the shape of the dam gave the device an added structural strength. This testimony is not convincing. Since the strengthening characteristics of the invention were first emphasized in this court, rather than in the Patent Office,

such characteristics cannot be urged as the basis for validity of the patent. Graham, et al. v. John Deere Co. of Kansas City, et al., 86 S.Ct. 684 (Feb. 21, 1966). At this point, it would be well to state that the only possible evidence of an unsuccessful attempt to accomplish the same result is the evidence that Inland Navigation, in 1941, abandoned its plan for a petroleum-grain carrier with a V-shaped wheat sump when the Bureau of Marine Inspection insisted upon cofferdams. There is no evidence that the project was abandoned on account of problems presented by design or construction or other technical difficulty.

Here, I must emphasize that no feature of the Pickrell Patent, other than the V-shaped cofferdam, was novel to any extent which could prove useful to plaintiff. It is conceded that both the V-shaped holds and cofferdams were well known to and used in the industry, prior to Pickrell.

This, naturally, leads to the inquiry of whether the conception of the V-shaped cofferdam was truly original, representing what has been referred to as a "flash of inventive genius." Cuno Engr. Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Fowler v. Vimcar Sales Co., 216 F.2d 263 (9th Cir.1954); Wham-O-Mfg. Co. v. Paradise Mfg. Co., 327 F.2d 748 (9th Cir. 1964).

We now know, what we have long suspected, that the "flash of inventive genius", mentioned in *Cuno*, is but " * * * rhetorical embellishment of language going back to 1833 * * * " and that the court in that case merely meant to rhetorically restate the requirement that the subject matter sought to be patented must be beyond the skill of the calling. In other words, it was the device not the inventor that had to reveal the "flash of creative genius". Graham v. John Deere Co., supra. That the decision in *Cuno* is of great significance in arriving at a proper conclusion on the present facts, is beyond question. There, the patent was awarded on a design of a cigar-cigarette lighter, prin-

cipally intended for use in automobiles. Prior to that time, many variants of a "wireless" lighter had been used. However, in each one of those the contact was made by pressing the igniter unit or a push-button, the pressure being relaxed and the plug removed at the instance of the user. Sometimes the lighter was too hot, on other occasions too cold. The patent in *Cuno* disclosed a "wireless" lighter equipped with a thermostat which automatically released and returned the lighter to its original position when heated to a proper temperature. Of course, this provided a device which was less dangerous for the driver to use, far more efficient and involved no guess work as to the proper temperature. Although electric-coil lighters and thermostats had been used prior to the time, nothing closely resembled the patent there in suit. In holding the patent invalid for want of invention, the Supreme Court conceded that the functions performed by the combination were new and useful, but then went on to emphasize that the device must also be an "invention" or "discovery." The Court further emphasized the requirement that an improvement to obtain the privileged position of a patent must have more ingenuity involved than the work of a mere mechanic skilled in the art. Perfection of workmanship, no matter how much it may increase convenience, or extend use or diminish expense, is not patentable.

■ The Pickrell device, when viewed in the light of the decision in *Cuno*, and the provisions of 35 U.S.C. § 103, as interpreted in Graham v. John Deere Co., supra, does not, in the last analysis, portray anything beyond the work of one who was merely skilled in his calling. Certainly, the Pickrell design is "new and useful." It does "increase the convenience" in loading and unloading the grain carrier, along with the petroleum

products. It does "extend the use" of vessels suited to carrying both cargoes, and it does "diminish the expense" of the carriers, handlers and producers of those products. It did introduce a safety feature not found in other V-shaped grain carriers, but the same features were involved in *Cuno*.

Surely, if the Pickrell device of a V-shaped cofferdam involved unique or unusual problems of engineering or construction, which were solved only by the Pickrell technique, experts would have been called to so testify. Not only, is the record completely silent on such a claim, but the plaintiff's witnesses practically conceded that there was nothing unusual or unique in the problems of engineering or construction presented by the Pickrell device.[5] The overwhelming weight of the expert testimony is that it would have been a fairly simple matter to modify the earlier devices or to combine features well known to the industry and long in use, and come up with a device following the Pickrell design.[6]

■ To be conceded, is the fact that the Pickrell cofferdam was unprecedented and was quickly imitated. That argument is answered by a reference to the *Cuno* decision in which no previous cigar lighter had incorporated a thermostat in a manner highly suitable for use in automobiles. Nor is it enough that the "innovation" was a simple matter of combining well known features. Also to be recognized is the line of cases which teach that an alleged infringer's reference to the challenged patent in producing its own article is, in itself, evidence of the non "obvious" character of the design. Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401 (7th Cir. 1950); Diamond Rubber, supra; Copease Mfg. Co., Inc. v. American Photocopy Equip. Co., 298 F.2d 772 (7th Cir. 1961). Recognizing, as I do,

---

5. "Q. Would you have any difficulty, as a man skilled in the shipbuilding field, in making a cofferdam, making a single-walled construction into a cofferdam by adding another wall and making it a void space?

A. He might.
Q. Any more than would be within the ordinary skill of such a person?
A. No."
(Norgaard, R. 242.)

6. R. 353–5, 426–7, 432–3, 440–1.

the law in those cases, as applied to the facts there stated, I can find no room for the application of those principles to the facts here presented. On this record, the Pickrell cofferdam has not been independently nor directly, demonstrated. What could make the cofferdam more obvious than a law which required its construction? The Coast Guard Regulations have the force and effect of law. The Coast Guard Regulations defining and requiring a cofferdam were promulgated, pursuant to statute.[7] Such regulations establish a standard of care. Marshall v. Isthmian Lines, Inc., 334 F.2d 131, 134-135 (5th Cir. 1964), with commendable clarity, states the law on the subject:

"* * * The whole statutory scheme is something much more than a set of prohibitions with punitive sanctions. It establishes a standard of care to which all concerned are bound, including those who do, and those who do not, wish to comply. * * *"

Obviously, by reason of these regulations, Pickrell was required to use a cofferdam if the design was intended to transport dry cargo and certain types of petroleum.

The most recent guideline to a solution of the problem is Graham v. John Deere Co., supra, where the test for "obviousness" is thus delineated:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give

light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." 86 S.Ct. at 694. (Emphasis supplied.)

Graham's companion cases of Calmar, Inc. v. Cook Chemical Co. and Colgate-Palmolive Co. v. Cook Chemical Co., decided the same date, refer to the secondary considerations mentioned in Graham. It has been said that such factors as "long felt want," failure of other mechanics to do more than improve "constructural details of prior devices," prompt "commercial success" and "partial displacement of prior art devices" are "at most weak reeds for a patentee to lean on." Farr Co. v. American Air Filter Co., 318 F.2d 500, 504 (9th Cir. 1963).

In the final analysis, it seems crystal clear that the controlling reason for the inclusion of the V-shaped cofferdam in the Pickrell design, was Coast Guard Reguation 32.60–10.[8] V-shaped cargo holds for the transportation of petroleum and grain, in the same vessel, without a cofferdam, would have been illegal. The particular regulation, with a minor modification, has been in effect since 1936. The regulations, as previously mentioned, are published in the Federal Register, are available to the public and are widely distributed to shipyards, naval architects, naval engineers and others. Pickrell conceded that he knew of the regulations requiring cofferdams between dry cargo spaces and tanks carrying class "A", "B", "C" or "D" petroleum products long before his conception of the Pickrell design. Also, he knew at the time of his conception that it would be necessary for him to obtain Coast Guard approval of the plans of any barge to be built in accordance with the design as

---

7. 46 U.S.C. §§ 170, 170a, 170b.
8. "General. The galleys, living quarters, navigation spaces, general cargo spaces, boiler rooms, and enclosed spaces where sources of vapor ignition are normally present, shall be segregated from cargo tanks by cofferdams or pump rooms or tanks, either empty or used to carry

liquid having a flashpoint of 150° F. or above, or deck spaces enclosed or open.
"(b) Cargo tank spaces. Cargo tank spaces shall extend to the main deck, with hatches and vents located on the weather deck. Liquids having a flashpoint of not less than 150° F. may be carried in the bulk tanks located beyond the segregating cofferdams and/or pump rooms."

disclosed in the Pickrell Patent. To overcome the effect of this regulation, the plaintiff cites Twentier's Research, Inc. v. Hollister, Inc., supra, and argues that the regulations created the problem, but did not provide the solution. Plaintiff's argument might have merit if there was evidence or logic in its support. The overwhelming weight of the credible evidence is to the effect that there was nothing unique, novel, or extraordinary in the design of a V-shaped cofferdam. For that matter, the court could well take judicial notice of that fact. Certainly, the creation of such a V-shaped design would not require more ingenuity than that possessed of a mechanic skilled in the art.

Other cases, such as Baldwin-Southwark Corp. v. Tinius Olsen Testing Mach. Co., 88 F.2d 910 (3d Cir. 1937), cert. denied 302 U.S. 696, 58 S.Ct. 14, 82 L.Ed. 538 (1937); Great A. & P. Tea Co. v. Supermarket Equip. Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) and Reiner v. I. Leon Co., Inc., 285 F.2d 501 (2d Cir. 1960), are highly instructive and their teachings helpful, but fail to hit the target in this case. Admiral Murphy's testimony indicates that someone brought a device similar to the Pickrell Patent to the Coast Guard's attention in 1957, long prior to the Pickrell invention. The device was informally discussed at meetings. It is my finding that there was nothing in the actions of the Coast Guard at the time of the review of this design that is in any way helpful to the plaintiff.

### IV.

Conceding a strong presumption as to the validity of a patent, Patterson-Ballagh Corp. v. Moss, supra, and that a heavy burden is placed on he who challenges its validity, Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983 (1937), nevertheless, it is my finding, on the entire record, that the Pickrell device presented nothing which was not obvious in an architectural sense, nor did it demand new techniques of construction. No part of

the device, with the exception of the cofferdam, was without precedent in the industry and the cofferdam's form and location were, in view of prior developments in the industry, all but spelled out for Pickrell by the Coast Guard Regulations. Although, as previously mentioned, the prior art not considered by the Patent Office would have added nothing material to that which was considered, each article of that art, would have added something to the evidence in this proceeding that the Pickrell design was obvious. Griffith Rubber Mills v. Hoffar, 313 F.2d 1 (9th Cir. 1963).

Again, to be emphasized is Pickrell's testimony that the Russell Barges and the Russell Patent made "obvious" every feature of his design, with the exception of the cofferdam.

On the issues of fact outlined in the pre-trial order, I find that the Pickrell Patent is invalid for the reasons here mentioned.

This is not an exceptional case, within the meaning of 35 U.S.C. § 285. Therefore, I exercise my discretion against the award of attorney fees in favor of defendant.

Anticipating the appeal of this cause to the Court of Appeals, and further anticipating the possibility of the Court of Appeals taking a different view as to the "obviousness" of the Pickrell design, I shall indicate my views with reference to the issues on infringement. If the Pickrell Patent is declared valid, then I would have no hesitancy in holding that defendant's barges, built, converted and operated by defendant, infringed claims 1, 6, 8 and 11, of the patent in suit in the specifications as set forth and described in paragraph 2, subdivisions (a), (b), (c) and (d) on pages 8 and 9 of the pre-trial order; that the acts of infringement were knowingly, willfully and wantonly committed and that the plaintiff would be entitled to injunctive relief against further infringements. The issue of damages would be reserved for a future hearing. Defendant has failed to prove an estoppel against the plain-

tiff in the manner charged in the pretrial order.

The agreed facts and this opinion shall serve as my findings. Additional findings may be requested. A proposed decree of dismissal shall be prepared, served and presented by counsel for defendant.

Although adding no weight to my findings or conclusions, I must say that my sympathies are entirely with the plaintiff's position. It seems unfair that the patentee is not entitled to the benefit of putting together what might be termed a jigsaw puzzle and making it work. It would seem that he should be deserving of more than applause for a job well done.