27 C.C.P.A. (Patents)

**In re ARZBERGER.**

**Patent Appeal No. 4351.**

Court of Customs and Patent Appeals.

June 24, 1940.

John Boyle, Jr., of Washington, D. C. (F. M. Crawford and Stuart W. Scott, both of Terre Haute, Ind., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting the single claim of appellant's application for a plant patent under the provisions of section 4886, Re-

vised Statutes as amended, 35 U.S.C.A. § 31.

The grounds of rejection, as stated by the examiner, were: "The claim on appeal is rejected on *two* grounds: Firstly, that the subject matter of this claim is not within the plant patent provision of R.S. 4886 (U.S.C. title 35, section 31, 35 U.S.C. A. § 31), above quoted; and secondly, that said subject matter is lacking in invention."

The Board of Appeals affirmed the decision of the examiner upon both grounds of rejection.

The appealed claim reads as follows: "1. Bacteria herein described and designated as *Clostridium saccharo-butyl-acetonicum-liquefaciens.*"

The references relied upon are as follows:

Arzberger, 2,139,108, December 6, 1938.

Textbook of Bacteriology, Zinsser et al., 7th Ed. 1935, pages 22, 156 and 157.

General Bacteriology, Jordan, 11th Ed. 1935, page 125.

Agricultural and Industrial Bacteriology, Buchanan, 1930, pages 11 and 12.

Manual of Determinative Bacteriology, Berger; 1934, p. 13.

Senate Report No. 315 on Plant Patents; 71st Congress, 2d Session, April 2, 1930, to accompany Bill S. 4015, 11 pages.

House of Representatives Report No. 1129, 71st Congress, 2d Session, April 10, 1930, to accompany Bill H. R. 11372, 11 pages.

Gardener's Assistant, Thompson, 1878, pages 291-294, 297, 304 and 313.

Bacteriology, Tanner, 3d Ed. 1938, page 28.

The First Plant Patents, Allyn, 1934, pages 67 to 71, 77 to 83, relating to Congressional Hearings taken from the Congressional Record.

Journal of the Patent Office Society, Vol. XIII, 1931, p. 20.

Journal of the Patent Office Society, Vol. XVI, 1934, pages 184, 185, 252, 253, 254 and 255.

U. S. Daily, June 18, 1930, Article by Taylor, page 4.

In view of the conclusion we have reached, we find it necessary to discuss only the first ground of rejection.

The alleged invention is described by the examiner in his statement to the Board of Appeals as follows:

"This application relates to a species of bacteria. This species of bacteria is named by applicant *Clostridium saccharo-butyl-acetonicum-liquefaciens* and cultured by him from Louisiana cane field soil. These bacteria are useful for producing butyl alcohol, acetone, and ethyl alcohol when grown in a suitable nutrient carbohydrate medium. Reproduction of these bacteria is asexual, by binary fission.

"The drawings illustrate applicant's species of bacteria and show vegetative cells (Fig. 1); vegetative cells showing flagella (Fig. 2); and sporangia and free spores (Fig. 3). It is pointed out that these bacteria are not distinguishable on a solely morphological basis from other closely related bacteria, but that their novelty resides in a combination of these morphological characteristics and the cultural and physiological characteristics described in accordance with the Descriptive Chart of the Society of American Bacteriologists. This description is found on pages 2 to 8 in the specification.

"This application is filed under the statutory provision for plant patents, R.S. 4886 (U.S.C. title 35, section 31), which reads:

"'* * * invented or discovered and asexually reproduced any distinct and new variety of plant other than a tuber-propagated plant * * *'"

The question before us upon the first ground of rejection is whether the bacteria recited in the claim are patentable under the plant provision of section 4886, supra, assuming that said bacteria are novel.

In holding that said bacteria are not plants within the meaning of said provision the examiner held that the scientific classification of bacteria in the living kingdom is in doubt, stating that: "The scientific classification of bacteria in the living kingdom is in doubt. The authorities recognize that bacteria are not plants in the strict sense. Applicant has submitted numerous references to authorities on the subjects of botany and bacteriology which state that bacteria are classified as plants and that plants include bacteria. It is not intended to take issue with these authorities. Notwithstanding, however, it is pointed out that a distinction is drawn between this authoritative classification and the *fact* that bacteria are midway between plants and animals, i. e, possessing both plant and animal characteristics. This classification is *optional* and based upon the

observations that bacteria have a preponderance of plant characteristics. * * *"

The examiner in his statement then quoted from numerous publications cited as references. After these quotations and some discussion of them, the examiner further stated:

"In view of these authorities it is thought clear that there is reason to question that bacteria are plants. To bring the claim on appeal within the statutory provision aforesaid there should be no doubt that bacteria are plants.

"Further, if bacteria are plants, it seems clear that they are not within the plant statute for the reason that it was obviously not intended by Congress to include them as plants. Congressional intent may hardly be disregarded.

"The cited Reports of the Senate and House committees with regard to the Plant Patents Law indicate clearly that the subject matter relates to plants in the ordinary and accepted sense. In fact, the term bacteria does not appear in these reports. The purpose of the bill to provide for plant patents is expressed in each of the reports, as follows:

" '* * * to afford agriculture, so far as practicable, the same opportunity to participate in the benefits of the patent system as has been given industry, and thus assist in placing agriculture on a basis of economic equality with industry. The bill will remove the existing discrimination between plant developers and industrial inventors. To these ends the bill provides that any person who invents or discovers a new and distinct variety of plant shall be given by patent an exclusive right to propagate that plant by asexual reproduction; that is, by grafting, budding, cuttings, layering, division, and the like, but not by seeds.'

"It is noted that asexual reproduction is defined in the Reports as by grafting, budding, cutting, layering, division, and the like. For definition of these methods of plant propagation, attention is drawn to the Thompson publication, Pages 291 to 294, 297, 304, and 313. If bacteria were within Congressional intent it is not seen how the above methods of asexual reproduction could be applied thereto.

"The Reports state that the intent of the plant patent is to offer adequate financial incentive to the plant breeder so that the *farmers* and *general public* that buy plants will be able promptly to obtain new improved plants at a more moderate cost. Those further suggested as beneficiaries under the plant patent are *nurserymen, horticulturalists,* and *individual growers.* Also:

" 'The farmers and general public that buy plants will be able promptly to obtain new improved plants at a more moderate cost.'

"Certainly, the House Committee on Patents did not have bacteria in mind when it made the above statement. Further, Pages 1 to 5 of each of the Reports are replete with statements indicating that bacteria were not intended to be included under the Plant Patent Act. It is concluded from a careful consideration of these Reports that it was not in any sense contemplated in the drafting of the plant patent statute to afford patent protection for bacteria used in the production of butyl alcohol, ethyl alcohol, and acetone.

* * *

"Because the Plant Patent Act is intended to benefit agriculture, and bacteria are in some instances a benefit to agriculture does not mean that bacteria are within the intendment of the Plant Patent Act as urged by the applicant. Agriculture has, of course, been benefited by the patent statutes since their inception, as by patents on farm machinery, plant husbandry, etc. Obviously, only *specific* agricultural benefits are intended.

"The exclusion of a chance find would indicate that bacteria are not included in the plant statute. A chance find is obviously something that can be seen by the naked eye. Bacteria are, of course, visible only upon isolation from their natural habitat and then only by means of a microscope. How, then, could bacteria be chance finds? If bacteria cannot possibly be chance finds, then what purpose would an exclusion clause serve?"

Upon this branch of the case the Board of Appeals in its decision stated: "Applicant contends that he is entitled to a patent under the Plant Provisions of the patent statute on the ground that bacteria may be considered as plants. It appears from the brief and the examiner's statement that, so far as classification goes, bacteria may also be classified as in the animal kingdom. In any event, it appears to us from the argument in the examiner's statement that Congress never at any time intended to include isolated

bacteria as coming within the Plant Patent Law. (Section 4886, Rev. Statutes.)"

Appellant vigorously challenges the statement of the board that "bacteria may also be classified as in the animal kingdom," and asserts that, while their classification as plants has been questioned, they are uniformly classified by scientists as plants.

From an examination of the references we are of the opinion that, while bacteria possess some of the characteristics of plants and some of the characteristics of animals, it is generally recognized by scientists that the characteristics of plants predominate in bacteria, and bacteria are usually scientifically classified as plants.

In Webster's New International Dictionary the first definition of "plant" reads as follows: "1. A young tree, shrub, or herb, planted or ready to plant; a slip, cutting, or sapling; * * *."

The third definition is a lengthy description of plants from a scientific standpoint, and in this definition bacteria are mentioned.

■ We think it may fairly be said that in the common language of the people, the meaning of the word "plant" is as stated in the first definition, above quoted. At any rate, whether Congress intended to include in the term "plant" all organic matter which may be scientifically classified as plants is open to such doubt as to warrant resort to the legislative history of the provision of section 4886 here involved, to aid us in ascertaining the intention of Congress in its enactment.

The bill embodying the provision here under consideration, which thereafter was enacted into law, originated in the House of Representatives in the Second Session of the 71st Congress, and was numbered 11372. The Committee on Patents which reported the bill filed a report from which we quote:

"I. Purposes of the Bill

"The purpose of the bill is to afford agriculture, so far as practicable, the same opportunity to participate in the benefits of the patent system as has been given industry, and thus assist in placing agriculture on a basis of economic equality with industry. The bill will remove the existing discrimination between plant developers and industrial inventors. To these ends the bill provides that any person who invents or discovers a new and distinct variety of plant shall be given by patent an exclusive right to propagate that plant by asexual reproduction; that is, by *grafting, budding, cuttings, layering, division, and the like, but not by seeds.* The bill does not provide for patents upon varieties of plants newly found by plant explorers or others, growing in an uncultivated or wild state.

"* * * To-day plant breeding and research is dependent, in large part, upon Government funds to Government experiment stations, or the limited endeavors of the amateur breeder. It is hoped that the bill will afford a sound basis for investing capital in plant breeding and consequently stimulate plant development through private funds.

"In addition, the breeder to-day must make excessive charges for specimens of the new variety disposed of by him at the start in order to avail himself of his only opportunity for financial reimbursement. Under the bill the breeder may give the public immediate advantage of the new varieties at a low price with the knowledge that the success of the variety will enable him to recompense himself through wide public distribution by him during the life of the patent. *The farmers and general public that buy plants will be able promptly to obtain new improved plants at a more moderate cost.*

"No one has advanced a just and logical reason why reward for service to the public should be extended to the inventor of a mechanical toy and denied to the genius whose patience, foresight, and effort have given a valuable new variety of *fruit or other plant* to mankind.

"This bill is intended not only to correct such discrimination, but in doing so it is hoped the genius of *young agriculturists* of America will be enlisted in a profitable work of invention and discovery of new plants that will revolutionize agriculture as inventions in steam, electricity, and chemistry have revolutionized those fields and advanced our civilization. (Italics ours.)"

An identical report was made by the Committee on Patents of the Senate when the bill was reported to the Senate.

Without quoting further from the report, it is sufficient to say that it fairly appears therefrom that the word "plant" as used therein was used in its popular sense and not in its scientific sense, and that the

bill was designed for the benefit of agriculturalists and horticulturalists.

It will be observed that the reports of the Committees state that the bill provides that any person who invents or discovers a new and distinct variety of plant shall be given by patent an exclusive right to propagate that plant by asexual reproduction, and propagation by asexual reproduction is defined in the reports to be "by grafting, budding, cuttings, layering, division, and the like, but not by seeds." While it is true that the bacteria here involved are asexually reproduced, it is not here claimed that appellant propagates them by any of the methods above set out, and we do not understand that appellant claims that the bacteria here involved are capable of being reproduced by any of such methods.

This, we think, is a strong indication of the character of plants intended to be embraced in the enactment of the legislation under consideration.

The word "bacteria" was not mentioned in the reports. It is well known that bacteria occur in the human body, in plants, in air, in soil, and in water, and although they are scientifically classified as plants we think that if Congress had intended that they should be included in the term "plant" as used in the bill there would be some indication to that effect, either in the bill or in the reports of the Committees.

A drop of water may contain thousands of bacteria, but outside of scientific circles a drop of water would not be regarded as containing thousands of plants.

That the scientific meaning of a word is not always controlling in the interpretation of statutes was established in the case of Nix v. Hedden, 149 U.S. 304, 13 S.Ct. 881, 882, 37 L.Ed. 745, where, in the interpretation of a tariff statute, the Supreme Court held that a tomato is a vegetable, although it is scientifically classified as a fruit. The court in its opinion stated: "Botanically speaking, tomatoes are the fruit of a vine, just as are cucumbers, squashes, beans, and peas. But in the common language of the people, whether sellers or consumers of provisions, all these are vegetables which are grown in kitchen gardens, and which, whether eaten cooked or raw, are, like potatoes, carrots, parsnips, turnips, beets, cauliflower, cabbage, celery, and lettuce, usually served at dinner in, with, or after the soup, fish, or meats which constitute the principal part of the repast, and not, like fruits generally, as dessert."

So here, we think that Congress, in the use of the word "plant," was speaking "in the common language of the people," and did not use the word in its strict, scientific sense.

Being of the opinion that the Patent Office tribunals were correct in holding that the subject matter of the claim before us is not within the plant provision of section 4886, supra, it is unnecessary for us to consider the second ground of rejection of the claim here involved.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.