**KIM BROS., a partnership, Plaintiff,**

v.

**L. A. HAGLER, Defendant.**

**No. 1793–ND.**

United States District Court
S. D. California, N. D.

Nov. 21, 1958.

Savage & Shepard by H. A. Savage and Richard L. Shepard Fresno, Cal., for plaintiff.

Walch & Griswold, Hanford, Cal., and Gareth W. Houk, Visalia, Cal., by Lyman Griswold, Hanford, Cal., and Gareth W. Houk, Visalia, Cal., for defendant.

YANKWICH, Chief Judge.

By the complaint, plaintiff Kim Bros., a partnership, seeks injunctive relief and damages in the sum of $7,084, the value of the trees, in addition the sum of $35,-000, the value of the crops, to be trebled, and accounting from the defendant L. A. Hagler for alleged infringement of U. S. plant patent 974 for nectarine trees, issued on August 22, 1950, to Frederic W. Anderson, who assigned it to the plaintiff. 35 U.S.C.A. § 281. The defendant has denied infringement. His more specific defense set forth in the pretrial order, dated March 3, 1958, is

"That the defendants have growing on their ranch, plots of at least 968 trees and one of 220 trees and one of 672 trees, of which number of trees the defendants allege that they are of an independent variety of nectarines called 'Red King.'"

At the trial there was also introduced in evidence defendant's plant patent 1718 for a nectarine tree, issued to the defendant on June 10, 1958, application for which was filed on October 28, 1957. Neither the pleadings nor the evidence challenge the validity of the plaintiff's patent. So the statutory presumption of validity must be given full scope. 35 U.S.C.A. § 282; Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 406.

The problem to resolve is whether there is infringement. Before stating the conclusion reached on this issue, it is well to make some general observations as to the nature of the patent in suit. The patent was granted under a special statute which provides that

"Whoever invents or discovers and asexually reproduces any distinct and new variety of plant, including cultivated sports, mutants, hybrids, and newly found seedlings," 35 U.S.C.A. § 161,

with certain exceptions, may obtain a patent which gives him

"the right to exclude others from asexually reproducing the plant or selling or using the plant so reproduced." 35 U.S.C.A. § 163.

Because of the difficulty of properly describing a plant, the Congress has waived the provisions of § 112 of Title 35 and provided that no plant patent shall be declared invalid for noncompliance with that section

"if the description is as complete as is reasonably possible." 35 U.S.C.A. § 162.

In view of the discussion to follow, the rules established by the Patent Office are of interest. They require that the specification contain

"as full and complete a disclosure as possible of the plant and the characteristics thereof that distinguish the same over related known varieties, and its antecedents, and must particularly point out where and in what manner the variety of plant has been asexually reproduced." 35 U.S.C.A.Appendix, rule 163; 37 C.F.R. § 1.163.

Only one claim is permitted and this is required to be

"in formal terms to the new and distinct variety of the specified plant as described and illustrated, and may also recite the principal distinguishing characteristics." 35 U.S.C.A.Appendix, rule 164; 37 C.F.R. § 1.164.

There is also the requirement that plant patent drawings be "artistically and competently executed"; the drawing may be in color "when color is a distinguishing characteristic of the new variety." 35 U.S.C.A.Appendix, rule 165; 37 C.F.R. § 1.165. Specimens of the plant, or its flower or fruit, in a quantity and at a time in its stage of growth as may be designated, must be furnished, if required, for study and inspection. 35 U.S.C.A.Appendix, rule 166; C.F.R. § 1.166. To secure the benefits of the statute, the patentee must (1) invent or discover a new and distinct variety of plant and (2) he must reproduce it asexually. The word "plant" is used in the popular and not in the scientific sense. In re Arzberger, 1940, 112 F.2d 834, 837, 27 C.C.P.A., Patents, 1315. The object of the enactment was to give to the inventor

"an exclusive right to propagate that plant by asexual reproduction; that is, by grafting, budding, cuttings, layering, division, and the like, but not by seeds." See the report of the House Committee on Patents as quoted in In re Arzberger, supra, 112 F.2d at page 837.

The courts have construed this statute strictly so as to confine its benefits to plant life as it is understood in the common language of the people. Cole Nur-

sery Co. v. Youdath Perennial Gardens, D.C.Ohio 1936, 17 F.Supp. 159; Bourne v. Jones, D.C.Fla.1951, 114 F.Supp. 413, 418, affirmed in Bourne v. Jones, 5 Cir., 1953, 207 F.2d 173, the Court of Appeals adopting the district judge's opinion as its own.

 The patentee who charges infringement is entitled to the presumption of validity. From such presumption no inference of infringement arises. On the contrary, he who charges infringement has the burden of proving it. 69 C.J.S. Patents § 325; Macite Corp. v. Davison, 1954, 94 U.S.App.D.C. 40, 211 F.2d 650. Except for the purpose of increasing damages when the infringement is willful, knowledge or intent is not material. 35 U.S.C.A. § 284; 69 C.J.S. Patents § 285; Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1, 4–5; E-I-M Company v. Philadelphia Gear Works, 5 Cir., 1955, 223 F.2d 36, 42.

 In the light of what precedes, the solution of the problem of infringement before us is not difficult. In considering the invention, we take cognizance of the fact that the nectarine is a smooth-skinned peach and that a large variety of them exists in the world market. Plaintiff's assignor Anderson, himself, is the patentee of a number of them. This in itself means that the Patent Office will allow a patent for a deviant plant when it is shown to have a few characteristics which distinguish it from others. Anderson, in his patent, claimed only three characteristics for the *Sun Grand* variety which is covered by the patent in suit:

"1. Its earlier ripening period with respect to other commercial varieties of yellow fleshed nectarines.

"2. Its larger size than the same.

"3. Its superior shipping and eating qualities."

The single claim is brief and stresses these three characteristics:

"A new and distinct variety of nectarine tree substantially as described and illustrated bearing yellow fleshed freestone fruit characterized by a ripening period between the white fleshed John Rivers and Grower varieties; approximately two weeks earlier than the yellow fleshed Kim or Bim varieties; and approximately three weeks earlier than the yellow fleshed Le Grand variety; its firm flesh; its relatively larger size; and its superior shipping and eating qualities."

The complaint charged willful and deliberate violation of the patent rights of the plaintiff and characterized the acts of the defendant as "secret" and "clandestine" and done with "deliberate intent." However, the proof showed that whatever actions the defendant took in growing the variety they now call "Red King" *were open and notorious.* There is no credible evidence that the appearance of the branch on what we called, at the trial, the "accused tree," in an orchard other than that of the defendant, and situated across the road from his, was the result of any grafting or budding of a branch or bud from the plaintiff's patented tree. There is a hearsay statement quoting Joseph E. Hunter, the owner of the orchard in which the "accused tree" was found, as saying that two persons, Robert Milton Riesner and Roy Milton Riesner, *"may have done it."* But they, when called as witnesses by the defendant, testified under oath that *they were not on the Hunter Ranch in 1954* at the time the alleged branch first appeared, carrying the new variety which the defendant claims as a sport and which he has patented. Indeed, they testified that the first time they went on the place was a year later. Their testimony stands uncontradicted. And every one of the persons *who could have grafted* the tree or budded it with the plaintiff's variety, Hunter, Hagler and their employees, denied such act under oath. It is true that even if the original grafting was an unauthorized and an unreported act committed, designedly or by mistake, by the plaintiff's own employees, it might still be an infringement, if the defendant took

the buds and budded other trees. However, in a case of this character, in which it is sought to recover as damages not only the alleged value of the trees planted but also the value of the nectarine crop sold to date by the defendant, to be trebled; and an injunction and an accounting are demanded to prevent or ascertain future damages, it is proper to call attention *to the disparity* between certain broad allegations on this subject in the complaint and the scant proof in the record. The absence of willfulness, of course, would call for the denial of treble damages only. 35 U.S.C.A. § 284; Artmoore Co. v. Dayless Mfg. Co., supra; E-I-M Company v. Philadelphia Gear Works, supra. However, we are of the view that the plaintiff has failed to prove that the trees grown by the defendant were the result of the appropriation by the defendant of the plaintiff's *Sun Grand* patent or that, to be more specific, during the year 1955 the defendant grafted *Sun Grand* nectarine scions on other fruit trees, or that in the year 1956 he budded trees of the same variety covered by the plaintiff's patent. We are also of the view that the evidence in the record warrants the conclusion that the trees of the defendant were the result of a sport or deviant and are of an independent variety named "Red King," as developed by him and covered by plant patent 1718, filed October 28, 1957, and issued on June 10, 1958.

No pleading has challenged the validity of the defendant's patent, knowledge of which was conveyed to plaintiff before suit. No written notice, as required by statute was given to them. However, the court absolved the defendant of the default as permitted by the statute. 35 U.S.C.A. § 282. And the defendant is entitled to the same presumption of validity as the plaintiff. 35 U.S. C.A. § 282. The Supreme Court has stated:

"The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. Walker on Patents, § 116. Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.'" Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983.

Our own Court of Appeals has given the reason for the presumption arising from the Congressional enactment:

"The presumption created by the action of the Patent Office is the result of the expertness of an administrative body acting within its specific field and can be overcome only by clear and convincing proof." Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 406.

This language is especially appropriate to the situation which confronts us here. The Congress in enacting the provisions for the patenting of plants, 35 U.S.C.A. § 161 et seq., has, of necessity, been compelled to dispense with the many rigid requirements as to the specifications, thus giving broad latitude to the admininstrative procedures in the Patent Office. And the regulations already referred to indicate that the Patent Office, aware of its responsibility, has made the added requirements as to specifications, drawings, color photography, and actual supply of specimens for inspection and comparison. In this manner, when they, with the knowledge of the field and of the prior art were satisfied that, in the crowded field of nectarines, the defendant had developed, from a sport or mutant, a nectarine which had sufficient new characteristics to amount to invention, their finding should be given due weight. The evidence in the record confirms the correctness of the determination of the Patent Office. For I am satisfied that the credible evidence warrants the conclusion that the nectarine grown by the defendant differs in coloration from that of the plaintiff. An examina-

tion of the actual fruit and the photographs introduced shows clearly the difference in coloration between the defendant's fruit which is reddish, and the plaintiff's fruit, which is orange. There is similar difference in coloration in the pit cavity of the fruit, the defendant's fruit having a reddish color around the pit. The fruits differ in size and shape as do also the pits. And there are also marked differences in the leaves as to shape, color and the glands on them. Because only two crops of the defendant's fruit have been harvested, the evidence as to earlier ripening could not be established with the same certainty with which the ripening period of an older variety could be established. However, I am convinced that, on the whole, the evidence sustains the conclusion that the defendant's variety ripens five or six days earlier than the fruit of its parent variety *Le Grand,* as claimed in the defendant's patent.

▆▆▆ The object of the statute relating to plant patents was declared by the Committee on Patents of the House of Representatives which reported the bill, to be,

> "to afford agriculture, so far as practicable, the same opportunity to participate in the benefits of the patent system as has been given industry, and thus assist in placing agriculture on a basis of economic equality with industry." As quoted in In re Arzberger, supra [112 F.2d at page 837.]

The fact that so many varieties are recognized as to one tree and that the plaintiff himself has obtained patents on a large number of them on a showing of minor differences in the tree and the fruit, is proof that it would be contrary to the intention of the Congress to allow one patentee to claim a monopoly of the field so as to exclude other trees clearly different in their appearance and structure and unequivocally shown to be the product of a sport or mutation. Judges who have been called upon to interpret this statute have hesitated to find infringement in the absence of *clear*

*and convincing proof.* Thus Judge Jones of the Northern District of Ohio, in a similar situation, wrote:

> "From a consideration of all of the evidence upon that subject, I feel unable to say that it would be impossible to reproduce or duplicate substantially the character of plant of the plaintiff without cuttings from the Horvath plants. Conceding that the plants of the plaintiff and of the defendants have similar characteristics, the proof is not clear and convincing that the plaintiff must have appropriated plants or cuttings belonging to Horvath or his assignee." Cole Nursery Co. v. Youdath Perennial Gardens, supra, 17 F.Supp. at page 160.

In the present case, I am of the view that not only has the plaintiff failed to prove by clear and convincing proof that the trees grown by the defendant are an infringement upon his patent but that, on the contrary, there is ample proof to show that the trees grown by the plaintiff were a sport or mutation of the *Le Grand* tree. This conclusion is not in any way weakened by the testimony in the record given by a well-known scientist in the field of genetics that sports or mutations in the nectarine field are rare. Rarity of occurrence does not stand in the way of recognizing the incidence of mutation and the consequent development of a new plant. Indeed, the enactment of this very statute presupposed the possibility of mutations. In one of the reported cases, Bourne v. Jones, D.C.Fla.1951, 114 F.Supp. 413, 418, it is stated that *"a million seedlings"* of sugar cane were tested to find *"only twenty new varieties that were worthwhile,"* and that the three patented varieties *"were selected from literally thousands of seedlings"* and plants grown from them. So long as mutation is in the realm of possibility, on the facts before me I am of the view that the evidence in the record warrants the conclusion that we have before us one such rarity, i. e., trees grown by the defendant not from grafts or buds appropriated from the plaintiff's patented

tree, but as a sport or mutation. The inventor of the patented plant, Frederic W. Anderson, admitted the possibility of the type of mutation which is claimed here. To quote from the record:

"By Mr. Griswold:

"Q. That is one way, mutation, is it not, that new varieties are brought into existence, into being? A. Yes.

"The Court: Go ahead, you may explain. You hesitated. You may give a reason. A. Yes, I think I made the explanation when we discussed mutation, mutations cover a broader field. This they said was a bud sport. *Now a bud sport is a mutation, but it is a special kind of a mutation that comes only from buds.*

"By Mr. Griswold:

"Q. Am I correct that if a nectarine was a mutation that it would be extremely remote, if not impossible, to be the same plant patent No. 974? A. Yes, you are wholly correct.

"Q. So, in other words, the chance of a mutation having all the characteristics of your plant patent 974 is impossible, or could we go that far? A. It is going very far.

"The Court: I presume 'remote' would be a better word.

"The Witness: Yes, extremely remote. *It has never happened in the history of horticulture, but that is not saying that it couldn't be some place.*" (Emphasis added.)

Truly, in the words of Ecclesiastes, there came to the defendant "a time to plant, and a time to pluck up that which is planted." [Ecclesiastes 3:2] It is true that

"He who discovers a hitherto unknown phenomenon of nature has no claim to a monopoly of it which the law recognizes." Funk Bros. Seed Co. v. Kalo Inoculant Co., 1948, 333 U.S. 127, 130, 68 S.Ct. 440, 441, 92 L.Ed. 588.

Nevertheless, the Congress has seen fit to grant a patent monopoly to those who produce new plants by

"*grafting, budding, cuttings, layering, division, and the like, but not by seeds.*" House Committee on Patents as quoted in In re Arzberger, supra [112 F.2d at page 837].

So that even if it be assumed that the validity of the defendant's patent could be open to challenge in a proper proceeding, the conclusion is warranted that the proof in the record shows that the plants grown by the defendant were developed by him from a sport or mutation and not by an appropriation or use of the plaintiff's patent.

In sum, nature has bestowed on the defendant agriculturalist one of its rare gifts, a plant mutation. He, having grown from it the variant trees by the asexual means provided in the statute, should not be deprived of the increments of the gift and of his own skill in growing from it a new plant producing a different fruit of the nectarine variety, by a broad judicial interpretation of the limited claim in the plaintiff's patent. Progress in the agricultural field, as in other fields, lies more in the encouragement of experimental and competitive variation rather than in upholding rigid and monopolistic uniformity in a single and crowded plant field. Thus the work of nature is aided. For has it not been written:

"God moves in a mysterious way, His wonders to perform?" [Light Shining Out Of Darkness by William Cowper, as quoted in Familiar Quotations by John Bartlett, 13th and Centennial ed., 1955, p. 362.]

Judgment will, therefore, be for the defendant, that plaintiff take nothing by their complaint. Costs to the defendant. Formal findings and judgment to be prepared by counsel for the defendant under Local Rule 7.